## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

BYRON PIERCE, ET AL.,
    *Plaintiffs*,

    v.                       No. 3:20-cv-1766 (VAB)

TOWN OF SIMSBURY, ET AL.,
    *Defendants.*

### RULING AND ORDER ON MOTION FOR SUMMARY JUDGMENT

Byron Pierce and Rebecca Prete (collectively, "Plaintiffs") have sued the Town of Simsbury, Connecticut (the "Town"); Simsbury Police Officers Samuel Robbins, Justin Gualducci, Kevin Marano, Justin Johnson, and Sergeant Mark Critz ("Officer Defendants"); and Simsbury Chief of Police Nicholas J. Boulter (collectively, "Defendants"). Mr. Pierce and Ms. Prete allege violations of their federal constitutional rights and related state law claims arising out of an incident on November 30, 2018, at the Riverview, a wedding venue in Simsbury. Consolidated Compl., ECF No. 35 (Nov. 30, 2018) ("Consolidated Compl.").

Defendants have filed a motion for summary judgment. Mot. for Summ. J., ECF No. 53 (Sep. 29, 2023) ("Mot.").

For the following reasons, Defendants' motion for summary judgment is **GRANTED in part and DENIED in part**.

Summary judgment is granted as to Mr. Pierce's false arrest claim, Mr. Pierce's excessive force claims against Sergeant Critz and Officer Marano, Ms. Prete's Fourth Amendment claim against Officers Robbins, Gualducci, Marano, and Johnson, Ms. Prete's *Miranda* claim, Ms. Prete's intentional infliction of emotional distress claim, and Mr. Pierce's defamation claim.

Summary judgment is denied as to Ms. Prete's false arrest claim, Ms. Prete's Fourth Amendment claim against Sergeant Critz, Mr. Pierce's excessive force claim against Officers Robbins, Gualducci, and Johnson, Mr. Pierce's failure to intercede claim, Mr. Pierce's intentional infliction of emotional distress claim, and Mr. Pierce's negligence and indemnification claims.

## I.  FACTUAL AND PROCEDURAL BACKGROUND

### A.  Factual Background

On November 30, 2018, Byron Pierce and Rebecca Prete attended a wedding reception at the Riverview in Simsbury, Connecticut. Pls.' Statement of Material Facts at 1 ("Pls.' SMF"). At about 10:39 p.m., they went to Ms. Prete's car in the parking lot. *Id*. They allegedly were discussing whether "to stay with friends, to call for a ride service such as Uber or Lyft, or to use the hotel's shuttle service." *Id*. at 1–2.

Officers Robbins and Johnson were dispatched to investigate them as a result of a phone call from a Riverview employee. *Id*. at 3. When they arrived, Officer Robbins knocked on driver's side window where Mr. Pierce was sitting, and Mr. Pierce opened his door to speak to the Officers. *Id*.; Defs.' Statement of Material Facts ¶ 6 ("Defs.' SMF").

Subsequently, Ms. Prete left the vehicle. Pls.' SMF at 3. Ms. Prete alleges that she was asking the Defendant Officers what they did wrong when they aggressively yelled "[y]ou're interfering" at her, ordered her to put her hands behind her back, and put her in the back of a cruiser handcuffed. Pls.' SMF at 3. Ms. Prete alleges that, during this time, she watched Sergeant Critz and other officers search her vehicle. *Id*. at 6.

Ms. Prete alleges that nearly an hour after being placed in the cruiser, she was transported to the Simsbury Police Station where she was allegedly interrogated, and then released into her father's custody at approximately 1:00 a.m. *Id*. at 3–4, 7.

After Ms. Prete was detained, the officers continued interacting with Mr. Pierce. *Id*. at 4; Defs.' SMF ¶ 26. Mr. Pierce attempted to sit in the vehicle. Pls.' SMF at 4; Defs.' SMF ¶ 31. Officer Robbins ordered Mr. Pierce to "come out of the car" and warned him that they were going to pepper spray him. Pls.' SMF at 4. These statements were captured by a nine minute and thirty-five second audio recording that Mr. Pierce captured. Defs.' SMF ¶ 32; Pls.' Responses to Defs. SMF ¶ 32, ECF No. 56-1. After an officer sprayed Mr. Pierce, they pulled him out of the vehicle. Pls.' SMF at 5.

At this point, Mr. Pierce alleges that he "attempted to curl himself into a ball to protect himself from the assault." *Id*. Mr. Pierce alleges that the officers then used a baton to inflict pain to his calf, used closed fist strikes "to smash [Mr.] Pierce's head and bang his head into the asphalt," and that Officer Robbins deployed his Taser twice. *Id*. He also alleges that he "pleaded for the officers to get off of his neck because he could not breathe" and told them they were "banging [his] head on the ground," following which Officer Gualducci allegedly struck Mr. Pierce with closed fist punches. *Id*. at 6. The officers then handcuffed Mr. Pierce. *Id*.; Defs.' SMF ¶ 47.

### B. Procedural History

On November 3, 2020, Plaintiffs filed a complaint against the Officer Defendants (except for Sergeant Critz), Chief Boulter, and the Town in Connecticut Superior Court at Hartford. Notice of Removal Ex. 2, ECF No. 1-2 (Nov. 24, 2020).

On November 24, 2020, Defendants removed the case to federal court on the basis of federal question jurisdiction. Notice of Removal, ECF No. 1 (Nov. 24, 2020).

On January 4, 2021, Defendants filed a partial motion to dismiss and answered Plaintiffs' Complaint. Defs.' Partial Mot. to Dismiss, ECF No. 12 (Jan. 4, 2021); Defs.' Answer and Affirmative Defenses to Pls.' Compl., ECF No. 13 (Jan. 4, 2021).

On July 30, 2021, Plaintiffs filed an Amended Complaint. Am. Compl., ECF No. 24 (July 30, 2021).

Defendants then renewed their partial motion to dismiss and filed an Answer to the Amended Complaint. Defs.' Renewed Partial Mot. to Dismiss, ECF No. 26 (Aug. 5, 2021); Defs.' Answer and Affirmative Defenses to Pls.' Am. Compl., ECF No. 27 (Aug. 5, 2021).

On November 23, 2021, Plaintiffs filed a separate Complaint against Sergeant Critz. Compl., *Pierce v. Critz*, No. 3:21-cv-01565-VAB (D. Conn. Nov. 23, 2021). That case was consolidated with this one on December 21, 2021. Order, ECF No. 32 (Dec. 21, 2021).

On January 28, 2022, Plaintiffs filed the operative Consolidated Complaint against Sergeant Critz and the original Defendants. Consolidated Compl., ECF No. 35 (Jan. 28, 2022).

On February 11, 2022, Defendants collectively filed a new partial motion to dismiss and answered Plaintiffs' Consolidated Complaint. Mot. to Dismiss Consolidated Compl., ECF No. 38; Defs.' Answer and Affirmative Defenses to Pls.' Consolidated Compl., ECF No. 39 (Feb. 11, 2022).

On September 16, 2022, the Court issued a Ruling and Order on Defendants' partial motion to dismiss, denying the motion as to the defamation claim against Sergeant Critz and granting the motion as to the claims against Chief Boulter, the official-capacity claims, the § 7-

465 claims, the municipal liability claims against the Town, and the negligence claim against

Sergeant Critz. Order, ECF No. 44 (Sep. 16, 2022) ("Order").

On August 15, 2023, Defendants filed an Amended Answer to the surviving claims in

Plaintiffs' consolidated Complaint. Defs.' Am. Answer and Affirmative Defenses to Pls.'

Compl., ECF No. 50 (Aug. 15, 2023) ("Am. Answer").

On September 29, 2023, Defendants filed their motion for summary judgment. Mot.;

Mem. of Law in Supp. of Mot. for Summ. J., ECF No. 53-1 (Sep. 29, 2023) ("Mem.").

On December 14, 2023, Plaintiffs filed their opposition to Defendants' motion for

summary judgment. Pls.' Opp'n to Mot. for Summ. J., ECF No. 56 (Dec. 14, 2023) ("Opp'n").

On January 11, 2024, Defendants filed a reply in support of its motion for summary

judgment. Reply in Supp. of Defs.' Mot. for Summ. J., ECF No. 59 (Jan. 11, 2024) ("Reply").

On January 25, 2024, Plaintiffs filed a motion for permission to file a sur-reply in

response to Defendants' reply, which the Court granted on January 26, 2024, and instructed

Plaintiffs to file their sur-reply by February 2, 2024. Mot. to File Sur-Reply, ECF No. 60 (Jan.

25, 2024); Order, ECF No. 61 (Jan. 26, 2024). No sur-reply was filed by this date.[1]

## II.    STANDARD OF REVIEW

A court will grant a motion for summary judgment if the record shows no genuine issue

as to any material fact, and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P.

56(a). The moving party bears the initial burden of establishing the absence of a genuine dispute

of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The non-moving party may

defeat the motion by producing sufficient evidence to establish that there is a genuine issue of

---

[1] On February 14, 2024, Plaintiffs filed a sur-reply, ECF No. 70, nearly two weeks after the firm deadline of
February 2, 2024, set by the Court in order for it to be considered. *See* ECF No. 61 ("Any such sur-reply, however,
must be filed by February 2, 2024, or it will not be accepted.").

material fact for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). "[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Id.* at 247–48.

"[T]he substantive law will identify which facts are material." *Id.* at 248. "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Id.*; *see Graham v. Henderson*, 89 F.3d 75, 79 (2d Cir. 1996) ("[M]ateriality runs to whether the dispute matters, i.e., whether it concerns facts that can affect the outcome under the applicable substantive law." (citing *Anderson*, 477 U.S. at 248)).

"The inquiry performed is the threshold inquiry of determining whether there is the need for a trial—whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson*, 477 U.S. at 250. When a motion for summary judgment is supported by documentary evidence and sworn affidavits and "demonstrates the absence of a genuine issue of material fact," the non-moving party must do more than vaguely assert the existence of some unspecified disputed material facts or "rely on conclusory allegations or unsubstantiated speculation." *Robinson v. Concentra Health Servs., Inc.*, 781 F.3d 42, 44 (2d Cir. 2015) (internal quotation marks omitted).

The party opposing the motion for summary judgment "must come forward with specific evidence demonstrating the existence of a genuine dispute of material fact." *Id.* (internal quotation marks omitted). "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 250 (citing *Dombrowski v. Eastland*, 387 U.S. 82, 87 (1967); *First Nat'l Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253, 290 (1968)).

When deciding a motion for summary judgment, a court may review the entire record, including the pleadings, depositions, answers to interrogatories, admissions, affidavits, and any other evidence on file to determine whether there is any genuine issue of material fact. *See* Fed. R. Civ. P. 56(c); *Pelletier v. Armstrong*, No. 3:99-cv-01559 (HBF), 2007 WL 685181, at *7 (D. Conn. Mar. 2, 2007). In reviewing the record, a court must "construe the evidence in the light most favorable to the non-moving party and draw all reasonable inferences in its favor." *Gary Friedrich Enters., LLC v. Marvel Characters, Inc.*, 716 F.3d 302, 312 (2d Cir. 2013). If there is any evidence in the record from which a reasonable factual inference could be drawn in favor of the non-moving party on the issue for which summary judgment is sought, then summary judgment is improper. *See Sec. Ins. Co. of Hartford v. Old Dominion Freight Line Inc.*, 391 F.3d 77, 83 (2d Cir. 2004).

## III.   DISCUSSION

Defendants argue that summary judgment should be granted against Mr. Pierce and Ms. Prete on their remaining claims: Plaintiffs' false arrest claims, Mr. Pierce's excessive force claim, Mr. Pierce's failure to intervene claim, Ms. Prete's unlawful search claim, Ms. Prete's *Miranda* claim, Plaintiffs' intentional infliction of emotional distress claims, Mr. Pierce's negligence and derivative indemnification claims, and Mr. Pierce's defamation claim. Mem. at 11–40.

The Court will address each claim in turn.

### A.  The False Arrest Claim

To establish a claim for false arrest under 42 U.S.C. § 1983, a plaintiff must show that "(1) the defendant intentionally arrested him or had him arrested, (2) the plaintiff was aware of the arrest, (3) there was no consent to the arrest, and (4) the arrest was not supported by probable

cause." *Weinstock v. Wilk*, 296 F. Supp. 2d 241, 246 (D. Conn. 2003). "[F]avorable termination is [also] an element of 'a section 1983 claim sounding in false imprisonment or false arrest.'" *Miles v. City of Hartford*, 445 F. App'x 379, 383 (2d Cir. 2011) (citing *Roesch v. Otarola*, 980 F.2d 850, 853–54 (2d Cir. 1992)).

As to Mr. Pierce, Defendants argue that Mr. Pierce cannot maintain a claim for false arrest because his arrest was supported by probable cause. Mem. at 15–18. Defendants also argue that Mr. Pierce's *nolo contendere* plea entitles Defendants to summary judgment on Mr. Pierce's false arrest claim. Mem. at 19.

As to Ms. Prete, Defendants argue that Ms. Prete was only subject to an investigatory detention and that it is undisputed that Ms. Prete was not arrested, as required to sustain a false arrest claim. Mem. at 13–15.

Mr. Pierce concedes that "he cannot establish favorable termination to sustain a claim for false arrest," and thus does not oppose granting summary judgment on this claim. Opp'n at 14.

In response, Ms. Prete argues that because she was subjected to a prolonged detention and interrogation, was handcuffed, and her requests to leave were denied, she was subject to a full formal arrest under *Michigan v. Chesternut*, 486 U.S. 567 (1988), thus precluding summary judgment. Opp'n at 11–12.

The Court agrees.

Because Mr. Pierce does not oppose the granting of summary judgment, the Court will grant Defendants' motion on his false arrest claim, and only address Ms. Prete's false arrest claim.  Under *Chesternut*, "the police can be said to have seized an individual 'only if, in view of all of the circumstances surrounding the incident, a reasonable person would have believed that

he was not free to leave.'" *Chesternut*, 486 U.S. at 573 (quoting *United States v. Mendenhall*, 446 U.S. 544, 554 (1980)).

Defendants contend that it is undisputed that Ms. Prete was not subject to an arrest because during her deposition, Ms. Prete was asked "You were never arrested or charged with any crimes arising from this incident, correct?" Mem. at 14; Mem., Ex. I at 7, ECF No. 52-12 (Sep. 29, 2023) ("Mem., Ex. I"). And in response, Ms. Prete answered, "Correct." Mem., Ex. I at 7. Ms. Prete also, however, alleged that she was kept handcuffed in the back of the cruiser except for being allowed to use the bathroom, after which she was returned to the cruiser for approximately one hour. Opp'n, Ex. 2 ¶ 11, ECF No. 56-4 (Dec. 14, 2023) ("Opp'n, Ex. 2") ("I was forced back into the cruiser in the prisoner's cage for approximately one hour . . . ."); *see also* Opp'n, Ex. 4 at 9, ECF No. 56-6 (Dec. 14, 2023) ("Opp'n, Ex.4") ("I got out of the passenger-side door, went around the back of the vehicle and I asked the officer what we were doing wrong. He then pointed at me aggressively and said, [y]ou're interfering. Yelled at me, told me to put my hands behind my back, which I complied. He handcuffed me and put me in the back of the cruiser.").

Officer Robbins confirmed in his police report and deposition that Ms. Prete was detained by being handcuffed and placed into a cruiser. Mem., Ex. D at 4, ECF No. 53-7 ("Mem., Ex. D") ("She continued walking towards me, so I detained [Ms. Prete] with assistance from Officer Johnson. I placed her into handcuffs, double locked, patted her down for weapons, and placed her into cruiser #15."); Mem., Ex. F. at 6, ECF No. 53-9 ("Mem., Ex. F") ("I told her she was going to be placed into handcuffs and detained so she cooperated and she was placed in handcuffs and put in the back of Officer Johnson's cruiser.").

Ms. Prete also claimed to have been questioned and detained for approximately two hours after being taken to the police station, and denied permission to leave. Opp'n, Ex. 2 ¶ 11. ("I was questioned and physically detained for about two hours. . . . After several hours I was allowed to leave in my father's custody."). Although the police report written by Sergeant Critz does not mention questioning Ms. Prete, it does confirm that Sergeant Critz "was able to get [Ms. Prete's father] to come and pick up his daughter" and that Ms. Prete did not leave the station until then. Mem., Ex. J at 5, ECF No. 53-13 (Sep. 29, 2023) ("Mem., Ex. J").

On this record, where Ms. Prete claims to have been handcuffed for a significant period of time and denied permission to leave, it is for a jury to determine whether a reasonable person in Ms. Prete's position would have felt that she was not free to leave—in other words, whether Ms. Prete was subject to an arrest. *See Krug v. Cnty. of Rennselaer*, 559 F. Supp. 2d 223, 240 (N.D.N.Y. 2008) ("Based on Bonnie Krug's allegations that she did not feel she was free to leave for several hours during the time she was with Waters on June 7, 2001, her claims of false arrest against Waters must survive summary judgment. It will be for a jury to decide whether, under the facts as they existed, a reasonable person in Bonnie Krug's position would have felt that he or she was not free to leave.").

While Defendants also argue that, even if the officers could be liable for false arrest, they are still immune from liability under the qualified immunity doctrine, Mem. at 29, it is the Defendants' burden to establish whether "'arguable probable cause' existed—i.e., if 'a reasonable police officer in the same circumstances and possessing the same knowledge as the officer in question could have reasonably believed that probable cause existed in the light of well established law.'" *Kayo v. Mertz*, 531 F. Supp. 3d 774, 789 (S.D.N.Y. 2021) (quoting *Cerrone v. Brown*, 246 F.3d 194, 202–03 (2d Cir. 2001)).

That inquiry, however, turns on the facts surrounding the alleged arrest, which are disputed in this case. *Compare* Opp'n, Ex. 4 at 10 ("Q[.] . . . What else did the officer say to you prior to placing you in handcuffs? A[.] Nothing, besides pointing at me and telling me that I was interfering."), *with*, Mem., Ex. D ("[Ms. Pierce] exited the vehicle and approached myself and Officer Johnson, yelling at us for talking to [Mr. Pierce]. Both Officer Johnson and myself told [Ms. Prete] numerous times that she needed to take a step back to the vehicle and we would speak with her in a minute. [Ms. Prete] ignored my commands and continued to argue as she closed her distance to me. She yelled that she wanted to record this incident and I tried to explain to her that we were already recording on the cruiser dashboard camera. She still continued to get closer to me and once she was about a foot away, I told her that if she did not step back, I would place her in handcuffs. She continued walking towards me, so I detained [Ms. Prete] with assistance from Officer Johnson."). And when these issues are in dispute, a trial, rather than a summary judgment motion, is the proper place to resolve them. *See Jenkins v. City of New York*, 478 F.3d 76, 88 (2d Cir. 2007) ("[I]f the officer's reasonableness depends on material issues of fact, then summary judgment is inappropriate for both New York and federal false arrest claims.").

Accordingly, the Court will deny Defendants' motion for summary judgment as to Ms. Prete's false arrest claim.

### B.  The Excessive Force Claim

In *Graham v. Connor*, 490 U.S. 386 (1989), "the Supreme Court concluded that where a claim for excessive force 'arises in the context of an arrest or investigatory stop of a free citizen, it is most properly characterized as one invoking the protections of the Fourth Amendment.'" *Cugini v. City of New York*, 941 F.3d 604, 612 (2d Cir. 2019) (citing *Graham*, 490 U.S. at 394).

11

"[W]hether the force used is excessive is to be analyzed under that Amendment's "'reasonableness" standard.'" *Brown v. City of New York*, 798 F.3d 94, 100 (2d Cir. 2015) (citing *Graham*, 490 U.S. at 395). "[T]his evaluation must consider all the facts of the case, including the severity of the crime, whether the arrestee posed an immediate threat to the safety of others, and whether he actively resisted the arrest. *Cruz v. Reilly*, No. CIV. 3:05-CV-1524 (CFD), 2007 WL 2815151, at *4 (D. Conn. Sept. 26, 2007) (citing *Graham*, 490 U.S. at 396).

"Given the fact-specific nature of the inquiry, granting summary judgment against a plaintiff on an excessive force claim is not appropriate unless no reasonable factfinder could conclude that the officers' conduct was objectively unreasonable." *Amnesty Am. v. Town of W. Hartford*, 361 F.3d 113, 123 (2d Cir. 2004).

Defendants argue that they are entitled to summary judgment on Mr. Pierce's excessive force claim because the officers "used the minimum amount of force necessary" to effect his arrest. Mem. at 25. Defendants also argue that Sergeant Critz and Detective Marano are entitled to summary judgment because both lack the direct participation required by 42 U.S.C. § 1983, and that Officer Gualducci and Sergeant Johnson lacked personal involvement in specific uses of force and thus cannot be held liable for those. Mem. at 25–26.

Defendants also argue that even if Mr. Pierce had a viable excessive force claim, they are entitled to qualified immunity because "the discrete uses of force utilized to effect the lawful arrest of Mr. Pierce were permissible by law." Mem. at 29–31.

In response, Mr. Pierce argues that a reasonable factfinder could conclude that the officers' conduct was objectively unreasonable, thus precluding summary judgment. Opp'n at 14–15. Mr. Pierce also argues that a factual issue exists as to whether Sergeant Johnson participated in a use of force against Mr. Pierce. Opp'n at 18.

Mr. Pierce concedes that Officer Marano lacked personal involvement, Opp'n at 22, and is thus entitled to summary judgment on this claim. He also concedes that Sergeant Critz's liability would be for his alleged failure to intercede. Opp'n at 22.

In response to Defendants' argument as to qualified immunity, Mr. Pierce argues that "this inquiry cannot be answered on summary judgment because of the outstanding factual disputes as to the nature and reasonableness of any force used." Opp'n at 21.

The Court agrees, in part.

As a preliminary matter, because Mr. Pierce has conceded the absence of a viable excessive force claim against Sergeant Critz and Officer Marano, the Court will grant summary judgment as to them on this claim, and proceed to Mr. Pierce's excessive force claims against Officers Robbins, Gualducci, and Johnson.

As to the excessive force claims against Officers Robbins, Gualducci, and Johnson, "granting summary judgment against a plaintiff on an excessive force claim is not appropriate unless no reasonable factfinder could conclude that the officers' conduct was objectively unreasonable." *Amnesty Am.*, 361 F.3d 123. Here, the video and audio recording do not conclusively establish either Mr. Pierce's conduct or the officers' conduct such that no reasonable factfinder could conclude that the officers' conduct was objectively unreasonable, as required to grant summary judgment in Defendants' favor.

Mr. Pierce testified in his deposition that he was not resisting the officers who attempted to detain him. Opp'n, Ex. 3 at 19–20, 26, ECF No. 56-5 ("Opp'n, Ex. 3") ("Q[.] And once you started the recording, did you brace yourself against the vehicle to avoid being taken back out of

the vehicle? A[.] No. . . . [T]hey reached in and grabbed me without – I didn't do anything. I wasn't combative. I wasn't in any way aggressive. . . . I wasn't resisting.").

On the audio recording, however, the officers are heard informing Mr. Pierce that he was going to be arrested, instructing Mr. Pierce to "get out of the car," "come out of the car," or "step out of the car" twelve times, and warning him twice that he would be sprayed if he did not follow their order over the span of one minute and seven seconds before hearing the sound of the OC or pepper spray. Mem., Ex. L at 00:00–01:08, ECF No. 53-15 ("Mem. Ex. L"). The video recording shows two of the officers pulling Mr. Pierce out of the vehicle with one officer holding his leg and the other holding his arm as Mr. Pierce falls on his back. Mem., Ex. K at 0:17:47–0:19:51, ECF No. 53-14 ("Mem., Ex. K"); *but see* Opp'n, Ex. 3 ("[T]hey just pulled me into the street which I landed on my face on the pavement and broke my nose in doing that.").

Next, Mr. Pierce claims that Officers "Robbins and Johnson had him pinned and helpless on the ground." Opp'n at 17; *see also* Opp'n, Ex. 1 at ¶ 15 (Dec. 14, 2023) ("Opp'n, Ex. 1") ("While being beaten, I was told many times 'to stop resisting' although at no time did, I resist . . . .").

On the audio recording, one or more of the officers can be heard saying to Mr. Pierce "get your hands out," "pull your hands out," "move your hands," "put your hands behind your back," "let go of your hand," or similar commands at least twenty-one times in the roughly five minutes from when the officers pulled Mr. Pierce out of the vehicle to when the officers were able to handcuff him. Mem., Ex. L at 01:08–06:15; Mem. Ex., K at 0:19:50–0:24:46.

But the use of the video and audio recording to resolve some of the genuine issues of material fact are an insufficient basis for granting summary judgment, where other material factual issues remain. Thus, on this record, summary judgment cannot be granted on these

14

grounds. *Kerman v. City of New York*, 261 F.3d 229, 240 (2d Cir. 2001) (denying summary judgment where "the parties' versions of the facts differ[ed] markedly"); *Piper v. City of Elmira*, 12 F. Supp. 3d 577, 589 (W.D.N.Y. 2014) (determining that the plaintiffs' allegations regarding the amount of force use were sufficient to create genuine issues of material fact as to the reasonableness of the force used). As to the application of the qualified immunity, this doctrine "'shields police officers acting in their official capacity from suits for damages . . . unless their actions violate clearly-established rights of which an objectively reasonable official would have known.'" *Jones v. Parmley*, 465 F.3d 46, 55 (2d Cir. 2006) (quoting *Thomas v. Roach*, 165 F.3d 137, 142 (2d Cir. 1999)); *Gottlieb v. Cty. Of Orange*, 84 F.3d 511, 518 (2d Cir. 1996) ("A government employee sued in her individual capacity for damages arising out of her performance of discretionary functions is entitled to qualified immunity where it was objectively reasonable to believe that her acts did not violate clearly established federally protected rights." (citing *Anderson v. Creighton*, 483 U.S. 635, 639–40 (1987))); *see also Tierney v. Davidson*, 133 F.3d 189, 196 (2d Cir. 1998) ("A qualified immunity defense is established if (a) the defendant's action did not violate clearly established law, or (b) it was objectively reasonable for the defendant to believe that his action did not violate such law." (quoting *Salim v. Proulx*, 93 F.3d 86, 90–91 (2d Cir. 1996))).

The recordings establish distinct uses of OC spray and baton strikes followed by a period of combined uses of force.

The Court will address the application of the qualified immunity doctrine as to each type of force in turn.

1.  *Defendants' First Use of OC Spray*

Courts in this Circuit have generally granted qualified immunity to officers who used pepper spray against individuals actively resisting or posing a threat to officers. *See, e.g.*, *Brown v. City of New York*, 862 F.3d 182, 189–92 (2d Cir. 2017) (granting qualified immunity to officers who used pepper spray on an arrestee who refused to place her hands behind her back, where the officers warned her before each use of pepper spray); *McNight v. Vasile*, No. 11-CV06328P, 2017 WL 1176051, at *28 (W.D.N.Y. Mar. 30, 2017) (finding that officers are entitled to qualified immunity "where an individual is actively resisting arrest and refusing orders, and the scene presents a risk to officer safety").

Although Mr. Pierce testified otherwise, *see* Opp'n, Ex. 3 at 19–26, the recordings establish that he was refusing the orders to get out of the vehicle and physically resisting the officers' attempts to remove him from the vehicle before the officer used his OC spray for the first time. Mem., Ex. L at 00:00–01:08; Mem., Ex. K at 0:18:16–0:19:51. As stated, the officers informed Mr. Pierce instructed Mr. Pierce to "get out of the car," "come out of the car," or "step out of the car" twelve times and warned him twice that he would be sprayed. Mem., Ex. L at 00:00–01:08. Thus, the officers are entitled to qualified immunity for this use of OC spray. *See Brown*, 862 F.3d at 189–92 (upholding the district court's grant of qualified immunity where "[d]uring [the plaintiff's] noncompliance with the instructions, she was warned prior to each application of the pepper spray" and where she "received pepper spray . . . in furtherance of, the officers' attempts to accomplish the handcuffing").

2.  *Baton Strikes*

The officers "are entitled to qualified immunity unless existing precedent squarely governs the specific facts at issue." *Lennox v. Miller*, 968 F.3d 150, 156 (2d Cir. 2020) (quoting

*Kisela v. Hughes*, 138 S. Ct. 1148, 1153 (2018) (internal quotation marks omitted)). In other words, "existing precedent must have placed the statutory or constitutional question beyond debate." *Id*. (citing *Kisela*, 138 S. Ct. at 1152). There is some caselaw from district courts within the Second Circuit on the use of a baton on a suspect. *See Neal v. Wilson*, No. 15-CV-2822 (RA), 2017 WL 4129635, at *9 (S.D.N.Y. Sept. 15, 2017) (collecting cases) ("[A]n officer's use of a baton on a suspect who has already been restrained would violate clearly established law prohibiting the use of gratuitous and unnecessary force."); *Belanger v. City of Hartford*, 578 F. Supp. 2d 360, 366 (D. Conn. 2008) ("A reasonable police officer should know that swinging a baton at an individual's face while they are facing away from the officer without prior warning would constitute a violation of that individual's right to be free from excessive force."). But the Second Circuit itself has not spoken with great clarity on this issue. *See, e.g., Rolkiewicz v. City of New York*, 442 F. Supp. 3d 627, 646 (S.D.N.Y. 2020) ("There is no clearly established law that would have put Sullivan on notice that striking an actively resisting arrestee twice to effectuate an arrest in a location of the body that produced no injury, was unlawful.").

Nevertheless, there is clearly established precedent regarding the circumstances under which force can be appropriately applied, and such caselaw would appropriately extend to a police officer's use of a baton. *See Lennox*, 968 F.3d at 157 ("It was therefore clearly established by our Circuit caselaw that it is impermissible to use significant force against a restrained arrestee who is not actively resisting.").

Officer Robbins reported that he applied pressure with his baton as "compliance technique," however, from the video recordings, it appears that Mr. Pierce may have also been struck with the baton as Mr. Pierce alleged. Mem., Ex. K at 0:20:31–40, 0:24:53–55; *see also* Opp'n, Ex. 3 at 26 ("I had a police baton too. It was also used on my calf beaten, like explicitly

hard and I mentioned to them that I had a calf injury and they used that against me and so they used that as a weakness and started beating me exactly on the calf that was injured."). The recordings do not establish whether each use of the officers' baton occurred before Mr. Pierce was handcuffed, *see* Mem., Ex. K at 0:24:53–55. *Cf. Bryant v. Hartford*, No. 3:17-CV-01374 (VAB), 2021 WL 4477311, at *13 (D. Conn. Sept. 30, 2021) ("Strikes to Mr. Bryant after he had been placed in handcuffs would not entitle the officers to qualified immunity.").

As a result, to the extent that Officer Robbins used the baton as a measured use of force before handcuffing Mr. Pierce, then qualified immunity appropriately would attach. *See Rolkiewicz*, 442 F. Supp. 3d at 646 ("There is no clearly established law that would have put Sullivan on notice that striking an actively resisting arrestee twice to effectuate an arrest in a location of the body that produced no injury, was unlawful. As such, Sullivan is entitled to qualified immunity on Rolkiewicz's excessive force claims."). But if the use of the baton occurred after Mr. Pierce was handcuffed, then qualified immunity may not attach. *See Lennox*, 968 F.3d at 157 (recognizing that "significant force against a restrained arrestee who is not actively resisting" is "impermissible" under "clearly established" Second Circuit caselaw); *Jones v. Treubig*, 963 F.3d 214, 225 (2d Cir. 2020) ("[I]t [is] clearly established in this Circuit that it is a Fourth Amendment violation for a police officer to use significant force against an arrestee who is no longer resisting and poses no threat to the safety of officers or others." (citing *Tracy v. Freshwater*, 623 F.3d 90, 98–99 (2d Cir. 2010))).

On this record, however, the Court cannot determine precisely when all of the strikes by the baton occurred, and whether any particular strike was justified such that qualified immunity would attach. *Cf. id.* ("Because a reasonable jury could find that the force used by Officer Clarke was significant and that Lennox was not resisting when such force was used, we cannot say, as a

18

matter of law, that Officer Clarke did not violate clearly established law. The district court thus

properly denied Officer Clarke qualified immunity at this stage of the proceedings . . . .”). Thus,

qualified immunity will not be applied as to this particular use of force, at least not now, making

the granting of summary judgment inappropriate.

### 3. Combined Uses of Force

The Second Circuit has held that officers were entitled to qualified immunity where the

officers’ incremental and combined uses of force were undertaken in response to the plaintiff’s

threats and resistance and was withdrawn once the plaintiff was handcuffed. *McKinney v. City of*

*Middletown*, 49 F.4th 730, 739 (2d Cir. 2022) (“The undisputed facts of the case show that

McKinney threatened the defendant officers and actively resisted their efforts to subdue and

secure him. Under those circumstances, reasonable officers could disagree as to whether the

force the defendant officers applied in this case was lawful.”). In that case, however, the facts of

the altercation were undisputed. *Id.*

Here, Mr. Pierce claims that once the officers got him on the ground, they punched him,

sprayed him again, and “bashed” his head against the pavement while he was not resisting.

Opp’n, Ex. 3 at 22, 26. In his affidavit, Mr. Pierce listed the uses of force as follows:

> a. Numerous punches and kicks to my head and entire torso.
> b. Smashing my head face down into the asphalt.
> c. Driving a knee into the back of my neck while exclaiming to the
> other officers: “see this is how you do it”.
> d. Sprayed with mace at close range to my face.
> e. Struck with a baton to my right leg after telling the police officer
> I had an injury to my right calf.
> f. Tased two times.
> g. Restrained in handcuffs.

Opp’n, Ex. 1 ¶ 14. Defendants argue that Mr. Pierce “actively resisted, kicked Detective Marano,

used abusive and threatening language, and created a hazardous and physically offensive

condition due to his persistent active resistance." Mem. at 17. Defendants argue that, to gain compliance from Mr. Pierce while he "continued his active physical resistance," they delivered three palm strikes, created a pressure point on the back of Mr. Pierce's leg, delivered closed fist strikes, and two Taser drive stuns to Mr. Pierce's right leg at which point they were able to handcuff him. Defs. SMF ¶¶ 37, 39, 41–47.

The audio recording does capture Mr. Pierce saying, "I'm actually stronger than you. That's the problem," Mem., Ex. L at 05:19–22, however, the video recording does not resolve the factual disputes between Plaintiffs' and Defendants' accounts. Thus, summary judgment on qualified immunity grounds is not appropriate here. *See Husain v. Springer*, 494 F.3d 108, 133 (2d Cir. 2007) (noting "that '[s]ummary judgment on qualified immunity grounds is not appropriate when there are facts in dispute that are material to a determination of reasonableness.'" (quoting *Thomas v. Roach*, 165 F.3d 137, 143 (2d Cir. 1999))); *Piper*, 12 F. Supp. 3d at 590–91 (W.D.N.Y. 2014) ("The existence of factual disputes precluding summary resolution of [the plaintiffs'] excessive force claims also precludes a finding that the officers are entitled to qualified immunity on those claims.").

Accordingly, the Court will grant Defendants' motion for summary judgment on Mr. Pierce's excessive force claim as to the Defendant Officers' first use of OC spray and deny Defendants' motion for summary judgment as to their use of baton strikes, and their combined uses of force.

### C.  Failure to Intercede

"It is widely recognized that all law enforcement officials have an affirmative duty to intervene to protect the constitutional rights of citizens from infringement by other law enforcement officers in their presence." *Anderson v. Branen*, 17 F.3d 552, 557 (2d Cir. 1994)

(citing *O'Neill v. Krzeminski*, 839 F.2d 9, 11 (2d Cir. 1988)). "An officer who fails to intercede is liable for the preventable harm caused by the actions of the other officers where that officer observes or has reason to know: (1) that excessive force is being used; (2) that a citizen has been unjustifiably arrested; or (3) that any constitutional violation has been committed by a law enforcement official[.] In order for liability to attach, there must have been a realistic opportunity to intervene to prevent the harm from occurring. Whether an officer had sufficient time to intercede or was capable of preventing the harm being caused by another officer is an issue of fact for the jury unless, considering all the evidence, a reasonable jury could not possibly conclude otherwise." *Id.* (citations omitted).

Defendants argue that without a viable excessive force claim, they did not owe Mr. Pierce a duty to intervene. Mem. at 26. Defendants further argue that, even if they did owe Mr. Pierce a duty to intervene, the Defendant officers did not have a realistic opportunity to do so. *Id.*

In response, Mr. Pierce argues that Sergeant Johnson, Officer Gualducci, and Sergeant Critz all had realistic opportunities to intercede and that the Court must deny summary judgment on Mr. Pierce's failure to intercede claims to the extent that excessive force claim survives. Opp'n at 18–21.

The Court agrees.

To the extent that Mr. Pierce's excessive force claim remains, his failure to intercede claim must also survive, and remain a question for the jury. *See Anderson*, 17 F.3d at 557 ("Whether an officer had sufficient time to intercede or was capable of preventing the harm being caused by another officer is an issue of fact for the jury unless, considering all the evidence, a reasonable jury could not possibly conclude otherwise."); *see also Jennings v. City of Bridgeport*, No. 3:16-CV-117 (MPS), 2018 WL 950115, at *8 (D. Conn. Feb. 20, 2018)

("Because the failure to intervene claim depends on the underlying proof of a constitutional violation and because I have determined already that there are disputed facts as to whether Lynch violated Horace's Fourth Amendment right to be free from excessive force by tasing him twice, I must also deny the defendants' motion for summary judgment on this claim.").

Accordingly, the Court will deny Defendants' motion for summary judgment as to Mr. Pierce's failure to intercede claim.

### D.  The Fourth Amendment Warrantless Search Claim

"The Fourth Amendment prohibits 'unreasonable searches and seizures.'" *Gilles v. Repicky*, 511 F.3d 239, 244 (2d Cir. 2007) (citing U.S. Const. amend. IV). "It is well established that a warrantless search is '*per se* unreasonable under the Fourth Amendment—subject only to a few specifically established and well-delineated exceptions.'" *McCardle v. Haddad*, 131 F.3d 43, 48 (2d Cir. 1997) (quoting *Mincey v. Arizona*, 437 U.S. 385, 390 (1978)) (internal quotation marks omitted). Thus, "[a] plaintiff may bring a [§] 1983 action for an unreasonable warrantless search." *Doe v. Bridgeport Police Dept.*, No. 3:00-CV-2167 (JCH), 2000 WL 33116540, at *4 (D. Conn. Nov. 15, 2000) (citing *Ruggiero v. Krzeminski*, 928 F.2d 558, 562–63 (2d Cir. 1991)).

"The Supreme Court has articulated two tests for determining whether a police officer's conduct constitutes a 'search' for purposes of the Fourth Amendment: whether the police officer 'physically intrud[es] on a constitutionally protected area' and, if not, whether the officer violates a person's 'reasonable expectation of privacy.' The latter test focuses not on 'the presence or absence of a physical intrusion,' but instead on whether 'the government violates a subjective expectation of privacy that society recognizes as reasonable.' In both cases, however, the police officer must objectively violate a person's privacy interests for his conduct to qualify as a 'search.'" *United States v. Weaver*, 9 F.4th 129, 141 (2d Cir. 2021) (footnotes omitted).

Defendants argue that Sergeant Critz's purported search of Ms. Prete's vehicle does not rise to the level of a constitutional violation because Sergeant Critz briefly entered Ms. Prete's vehicle to retrieve her keys, phone, and purse before transporting her to the Simsbury Police Department to locate a ride for her. Mem. at 27–28. Defendants also argue that all other Defendant officers are entitled to summary judgment for lack of personal involvement. *Id*. at 28.

In response, Ms. Prete argues that the Defendant Officers conducted a "thorough search without her consent [or] probable cause to do so." Opp'n at 22.

The Court agrees only as to Sergeant Critz, and disagrees with respect to Officers Robbins, Gualducci, Marano, and Johnson.

On this record, the Court cannot grant summary judgment on the ground that Sergeant Critz did not conduct a search under the Fourth Amendment as "the Fourth Amendment is not concerned with the government actor's motivation." *Wheelings v. Iacuone*, No. 3:14-CV-00526 (CSH), 2015 WL 5306602, at *5 (D. Conn. Sept. 10, 2015), *aff'd sub nom. Wheelings v. Dorosh*, 668 F. App'x 401 (2d Cir. 2016) (citing *Bond v. U.S.*, 529 U.S. 334, 338 n.2 (2000) ("[T]he subjective intent of the law enforcement officer is irrelevant in determining whether that officer's action violates the Fourth Amendment . . . the issue is not [the agent's] state of mind, but the objective effect of his actions.").

Ms. Prete testified at her deposition that "there were police officers inside [her] vehicle." Opp'n, Ex. 4 at 21–22 ("Q[.] In your Complaint, there's a claim that the Defendants search your vehicle. Who do you claim searched the vehicle? A[.] I have no idea. Q[.] So out of the named Defendants, you have no idea? A[.] No. Q[.] Okay. When was your vehicle searched? A[.] I remember there were police officers inside the vehicle."). And Sergeant Critz confirmed that he entered Ms. Prete's vehicle. Opp'n, Ex. 9 at 19, ECF No. 56-11 ("Mem., Ex. 9") ("I entered the

23

vehicle to retrieve the keys and secure the vehicle. . . . I located the keys on top of the dashboard.
. . . I retrieved her phone and purse from the vehicle.").

 As to Sergeant Critz entering the vehicle in a caretaking function, as Defendants argue,
this goes to the reasonableness of the search, rather than whether a search occurred. *See U.S. v.
Maple*, 348 F.3d 260, 262 (D.C. Cir. 2003) (holding that an unreasonable search occurred where
a police officer opened a closed compartment in the defendant's car to secure the defendant's
cell phone and where it was distinguishable from *Cady v. Dombrowski*, 413 U.S. 433, 441 (1973)
in which the intrusion was "limited in scope to the extent necessary to carry out the caretaking
function").

 Although Defendants argue that Sergeant Critz's conduct was reasonable, *see* Reply at 8,
neither party presented a sufficient factual basis for the Court to make any determination on
summary judgment. Neither party included any facts speaking to this issue in their statements of
material facts and none of the deposition testimony provided to the Court details what exactly
Sergeant Critz did upon entering the vehicle.

 The Court can, however, grant summary judgment on this claim as to Officers Robbins,
Gualducci, Marano, and Johnson. Other than Ms. Prete's plural use of "officers" in her
deposition testimony, there is no record evidence of any officer being involved in the search of
the vehicle other than Sergeant Critz. Opp'n, Ex. 4 at 21–22 ("I remember there were police
officers inside the vehicle."). This is insufficient to create a genuine dispute of material fact as to
whether these officers entered the vehicle. *See, e.g.*, *Jusino v. Barone*, No. 3:22-CV-490 (SRU),
2023 WL 6379342, at *7 (D. Conn. Sept. 29, 2023) (recognizing that a party opposing summary
judgment "cannot rely on self-serving averments not substantiated by the evidentiary record to

establish a genuine issue of material fact" (citing *Deebs v. Alstom Transp., Inc.*, 346 F. App'x 654, 656 (2d Cir. 2009) (summary order))).

Accordingly, the Court will deny Defendants' motion for summary judgment as to Ms. Prete's Fourth Amendment claim against Sergeant Critz and grant the motion as to Officers Robbins, Gualducci, Marano, and Johnson.

### E.  The Fifth Amendment *Miranda* Claim

Under *Miranda v. Arizona*, 384 U.S. 436 (1966), "statements made by a suspect in custody in response to police interrogation are inadmissible, unless certain now famous warnings preceded the statements." *United States v. Reyes*, 353 F.3d 148, 152 (2d Cir. 2003) (citing *Miranda*, 384 U.S. at 454). "*Miranda* violations, absent coercion, do not rise to the level of constitutional violations actionable under § 1983." *Jocks v. Tavernier*, 316 F.3d 128, 138 (2d Cir. 2003) (citing *Deshawn E. v. Safir*, 156 F.3d 340, 346 (2d Cir. 1998)); *see also Vega v. Tekoh*, 597 U.S. 134, 150 (2022) ("In sum, a violation of Miranda does not necessarily constitute a violation of the Constitution, and therefore such a violation does not constitute 'the deprivation of [a] right . . . secured by the Constitution.'" (citing 42 U.S.C. § 1983)).

Defendants argue that Ms. Prete's must fail because she has not alleged the facts necessary to sustain a viable Fifth Amendment claim. Mem. at 29.

Ms. Prete concedes that *Miranda* does not provide a basis for a § 1983 claim and does not oppose summary judgment. Opp'n at 23.

Accordingly, the Court will grant Defendants' motion for summary judgment as to Ms. Prete's Fifth Amendment claim.

### F.  Mr. Pierce's Intentional Infliction of Emotional Distress Claim

To prevail on a claim for intentional infliction of emotional distress under Connecticut

law, "[f]irst the plaintiff must show 'that the actor intended to inflict emotional distress or that he

knew or should have known that emotional distress was the likely result of his conduct.' Second,

he must establish 'that the conduct was extreme and outrageous.' Third, he must show 'that the

defendant's conduct was the cause of [her] distress,' and fourth, she must prove 'that the

emotional distress . . . was severe.'" *Mumma v. Pathway Vet All., LLC*, 648 F. Supp. 3d 373, 398

(D. Conn. 2023) (citing *Appleton v. Bd. Of Educ. of Town of Stonington*, 757 A.2d 1059, 1062

(Conn. 2000)).

"Whether the Defendant's conduct is sufficient to satisfy the element of extreme and

outrageous conduct is a question, in the first instance, for the Court." *Stack v. Jaffee*, 248 F.

Supp. 2d 100, 104 (D. Conn. 2003) (citing *Johnson v. Chesebrough–Ponds USA Co.*, 918 F.

Supp. 543, 552 (D. Conn. 1996), *aff'd*, 104 F.3d 355 (2d Cir. 1996)). "Only where reasonable

minds would differ, does it become a question for the jury." *Id*.

"The general rule 'is that there is liability for conduct exceeding all bounds usually

tolerated by a decent society, of a nature which is especially calculated to cause, and does cause,

mental distress of a very serious kind.'" *Id*. (quoting *Johnson*, 918 F. Supp. at 552).

"Courts have held that the use of excessive force can establish a claim for intentional

infliction of emotional distress." *Betancourt v. Slavin*, 676 F. Supp. 2d 71, 81 (D. Conn. 2009)

(quoting *Frappier v. City of Waterbury*, 3:07-CV-1457(WWE), 2008 WL 4980362, at *3 (D.

Conn. Nov. 20, 2008)). That said, "[w]here 'material issues of fact exist regarding [a] plaintiff's

claim of excessive force, summary judgment is improper as to [a] plaintiff's claim of intentional

infliction of emotional distress.'" *Chalco v. Belair*, No. 3:15-CV-340 (VLB), 2017 WL 2408122,

at *7 (D. Conn. June 1, 2017), *aff'd in part, appeal dismissed in part and remanded*, 738 F.

App'x 705 (2d Cir. 2018) (citing *Clark v. Dowty*, No. 3:05-CV-1345 (WWE), 2007 WL

2022045, at *14 (D. Conn. July 9, 2007)).

Defendants argue that they are entitled to judgment on Plaintiffs' intentional infliction of

emotional distress claim because the Officers' conduct was reasonable, and they lacked the

requisite intent. Mem. at 34.

In response, Plaintiffs argue that a jury could reasonably find that the Officer Defendants'

conduct was extreme and outrageous, and that Plaintiffs suffered severe emotional distress.

Opp'n at 23–24.

As material issues of fact exist as to Mr. Pierce's excessive force claim, summary

judgment is improper as to his claim for intentional infliction of emotional distress. *See Chalco*,

2017 WL 2408122, at *7. For those officers who cannot be held liable for excessive force,

however—Officer Marano and Sergeant Critz—they also cannot be for a claim of intentional

infliction of emotional distress. *See Winter v. Northrop*, No. 3:06-CV-216 (PCD), 2008 WL

410428, at *7 (D. Conn. Feb. 12, 2008), *aff'd sub nom.*, 334 F. App'x 344 (2d Cir. 2009)

("Plaintiff has alleged no behavior on the part of Defendant Hufcut aside from his routine

participation in Plaintiff's arrests, based upon probable cause, which does not constitute

intentional infliction of emotional distress.").

Accordingly, the Court will grant summary judgment on this claim as to Officer Marano

and Sergeant Critz and deny summary judgment as to this claim as to Officers Robbins,

Gualducci, and Johnson.

**G.  Ms. Prete's Intentional Infliction of Emotional Distress Claim**

Connecticut law recognizes a claim for intentional infliction of bystander emotional

distress,

> if the bystander satisfies the following conditions: (1) he or she is
> closely related to the injury victim, such as the parent or the sibling
> of the victim; (2) the emotional injury of the bystander is caused by
> the contemporaneous sensory perception of the event or conduct that
> causes the injury, or by arriving on the scene soon thereafter and
> before substantial change has occurred in the victim's condition or
> location; (3) the injury of the victim must be substantial, resulting in
> his or her death or serious physical injury; and (4) the bystander's
> emotional injury must be serious, beyond that which would be
> anticipated in a disinterested witness and which is not the result of
> an abnormal response.

*Clohessy v. Bachelor*, 675 A.2d 852, 865 (Conn. 1996), *holding modified by Squeo v. Norwalk*

*Hosp. Ass'n*, 113 A.3d 932 (Conn. 2015). In addition to these elements, a bystander plaintiff

must establish that the extreme and outrageous conduct was "specifically intended to or

recklessly causes the plaintiff emotional distress . . . ." *Marsala v. Yale-New Haven Hosp., Inc.*,

142 A.3d 316, 330 (Conn. App. 2016).

Although the Consolidated Complaint does not specifically identify what conduct is

alleged to have caused Ms. Prete's emotional distress, *see* Consolidated Compl. ¶¶ 63–67, Ms.

Prete argues that the alleged conduct underlying her claim for intentional infliction of emotional

distress was the Defendant Officers "forcing [her] to witness the Defendants assault on Pierce,

while she was handcuffed and helpless." Opp'n at 24. The parties did not present arguments as to

the standard for intentional infliction of bystander emotional distress, however, because Ms.

Prete was a bystander to that conduct, the Court will construe her claim for intentional infliction

of emotional distress as one for intentional infliction of bystander emotional distress.

Connecticut courts have extended recovery for bystander emotional distress beyond the parent and child relationships identified in *Clohessy* to include people engaged to be married. *See Yovino v. Big Bubba's BBQ, LLC*, 896 A.2d 161, 165 (Conn. Super. Ct. 2006) ("This court is of the opinion that the relationship between an engaged couple may be the basis of a claim for bystander emotional distress in Connecticut."). This analysis of whether two people are "closely related" does not seem to foreclose recovery for a girlfriend or boyfriend. *Id*. (citations omitted) ("[T]he analysis of whether an engaged couple is 'closely related' hinges not on whether they have obtained a marriage license from the state, but whether they have a close relationship that 'is stable, enduring, substantial, and mutually supportive . . . cemented by strong emotional bonds and provid[ing] a deep and pervasive emotional security.'"). Connecticut courts have cautioned that "a claim for bystander emotional distress would likely not be allowed under current law in Connecticut even if a potential claimant witnessed the death of their unrelated closest personal friend." *Carcaldi v. McKenzie*, No. DBD-CV-136013956-S, 2014 WL 2257138, at *2 (Conn. Super. Ct. Apr. 24, 2014). And courts have been reluctant to place ordinary dating relationships within the realm of those who are considered "closely related." *See Simmons v. Fazzino*, No. 3:7-CV-1842 (AWT), 2011 WL 13343699, at *2 (D. Conn. Feb. 17, 2011) ("As to the first element, the plaintiff has not produced evidence that she and Simmons were 'closely related'–only that he was her boyfriend.").

On this record, however, a reasonable jury could find that Mr. Pierce and Ms. Prete were sufficiently "closely related," to have a viable bystander emotional distress claim. It is undisputed that Ms. Prete "was [Mr. Pierce's] girlfriend at the time." Mem., Ex. G at 8; Opp'n, Ex. 9 at 19. The two of them were not merely in a romantic relationship at the time of the incident, but were living together. Opp'n, Ex. 12 at 5, ECF No. 56-14 (Dec. 14, 2023); *see also*

*Yovino*, 896 A.2d at 165 (noting the significance of "a close relationship that 'is stable, enduring, substantial, and mutually supportive . . . cemented by strong emotional bonds and provid[ing] a deep and pervasive emotional security.'").

Nevertheless, the "closely related" prong is just one step in a four-step analysis. Most significantly, there is no evidence in this record of "a death or a serious physical injury" within the meaning of this claim. *See Clohessy,* 675 A.2d at 865 (specifying that the third prong of this four-part test requiring that "the injury of the victim be substantial, resulting in a death or a serious physical injury"). Although Mr. Pierce claims to have sustained a broken nose, facial burns, bruises, contusions, sprains, broken ribs, and a black eye, Opp'n, Ex. 1 ¶ 20, Mr. Pierce only provided evidence in the record to corroborate his sprained wrist, fractured nose, and his bruised and swollen eye, Opp'n, Ex. 9 at 8. *See, e.g.*, *Jusino*, 2023 WL 6379342, at *7 (recognizing that a party opposing summary judgment "cannot rely on self-serving averments not substantiated by the evidentiary record to establish a genuine issue of material fact"). Mr. Pierce's injuries—at least those that are corroborated in the record—do not create a genuine issue of material fact to support the "death or serious physical injury" required to sustain Ms. Prete's bystander claim. *Compare Conger v. Old Navy, LLC*, No. CV-096000986, 2010 WL 5065255, at *4 (Conn. Super. Ct. Nov. 23, 2010) (granting summary judgment after determining that a laceration requiring stitches was not a "serious physical injury") *and Nelson v. Winkel*, No. CV-030090872-S, 2004 WL 2591886, at *2 (Conn. Super. Ct. Oct. 4, 2004) (granting summary judgment after determining that the third prong of *Clohessy* was not satisfied by "bruises, contusions [that] required medical treatment and physical therapy"), *with, Malinguaggio v. Ryder Student Trans. Servs., Inc.*, No. CV 950547979, 1996 WL 500952, at *1 (Conn. Super. Ct. Aug. 23, 1996) (denying a motion to strike and determining that a question of fact existed as to

whether a minor who was hit by a bus and sustained "bruises, strains, sprains and abrasions to his left shoulder, right arm, right hand and right leg . . . [a] fracture of his right heel . . . and a fracture of his right hand . . ." was seriously injured).

Accordingly, the Court will grant Defendants' motion for summary judgment as to Ms. Prete's intentional infliction of emotional distress claim.

### H.  The Negligence and Indemnification Claims

"The essential elements of a cause of action in negligence are well established: duty; breach of that duty; causation; and actual injury." *Doe v. Saint Francis Hosp. & Med. Ctr.*, 72 A.3d 929, 947 (Conn. 2013) (quoting *Ryan Transportation, Inc. v. M & G Associates*, 832 A.2d 1180, 1184 (2003)). Connecticut municipalities, however, "are statutorily immune from negligence liability resulting from the discretionary acts of their employees, officers and agents." *Doe v. Petersen*, 903 A.2d 191, 193 (Conn. 2006).

The Connecticut Supreme Court has recognized an exception to this immunity "that allows for liability when the circumstances make it apparent to the public officer that his or her failure to act would be likely to subject an identifiable person to imminent harm." *Haynes v. City of Middletown*, 101 A.3d 249, 255 (Conn. 2014) (quoting *Edgerton v. Clinton*, 86 A.3d 437, 446 (Conn. 2014)). To establish that the identifiable victim/imminent harm exception applies, a plaintiff must show: "(1) an imminent harm; (2) an identifiable victim; and (3) a public official to whom it is apparent that his or her conduct is likely to subject that victim to harm." *Seri v. Town of Newtown*, 573 F. Supp. 2d 661, 672 (D. Conn. 2008) (quoting *Doe v. Petersen*, 903 A.2d 191, 198 (Conn. 2006)).

Defendants argue that Mr. Pierce's negligence and indemnification claims are barred by governmental immunity and, in the absence of any alleged ministerial duties, Mr. Pierce cannot maintain his negligence claim. Mem. at 34–36.

In response, Mr. Pierce argues that the imminent harm exception overcomes Defendants' governmental immunity, precluding summary judgment. Opp'n at 24.

Because a genuine issue of fact remains as to whether the officers' conduct constituted excessive force, a genuine issue of fact also remains concerning whether the identifiable victim/imminent harm exception applies. *See Conroy v. Caron*, 275 F. Supp. 3d 328, 355 (D. Conn. 2017) ("A genuine fact issue remains concerning whether the identifiable-person/imminent-harm exception to the government immunity doctrine applies here, at least with respect to defendants' conduct towards Martin on August 22."); *see also Ramos v. Town of E. Hartford*, No. 3:16-CV-166 (VLB), 2019 WL 2785594, at *21 (D. Conn. July 2, 2019) ("[T]he Court will allow the jury to decide whether Ramos can prove intentional or negligent conduct. As Ramos cannot recover under multiple claims based on the same conduct and harm, Defendants are not prejudiced.").

Accordingly, the Court will deny Defendants' motion for summary judgment as to Mr. Pierce's negligence and derivative claims.

## I.   The Defamation Claim

"Under Connecticut law, '[a] defamatory statement is defined as a communication that tends to harm the reputation of another as to lower him in the estimation of the community or to deter third persons from associating or dealing with him.'" *Skakel v. Grace*, 5 F. Supp. 3d 199, 206 (D. Conn. 2014) (quoting *Gambardella v. Apple Health Care, Inc.*, 969 A.2d 736, 742 (Conn. 2009)). "To establish a prima facie case of defamation, the plaintiff must demonstrate

that: (1) the defendant published a defamatory statement; (2) the defamatory statement identified the plaintiff to a third person; (3) the defamatory statement was published to a third person; and (4) the plaintiff's reputation suffered injury as a result of the statement." *Cweklinsky v. Mobil Chem. Co.*, 837 A.2d 759, 763–64 (Conn. 2004) (citing *QSP, Inc. v. Aetna Casualty & Surety Co.*, 773 A.2d 906, 916 (Conn. 2001)).

"'Lastly, truth is an absolute defense to an allegation of defamation[,]' and 'a defendant need not establish the literal truth of the allegedly defamatory statement; rather, substantial truth provides an affirmative defense[.]'" *Powell v. Jones-Soderman*, 433 F. Supp. 3d 353, 374 (D. Conn. 2020), *aff'd*, 849 F. App'x 274 (2d Cir. 2021) (quoting *Skakel*, 5 F. Supp. 3d at 207).

A defendant may also "shield himself from liability for defamation by asserting the defense that the communication is protected by a qualified privilege." *Gambardella*, 969 A.2d at 742 (citing *Torosyan v. Boehringer Ingelheim Pharmaceuticals, Inc.*, 662 A.2d 89, 103 (Conn. 1995)). "Once a defendant claims that privilege, courts must determine (1) whether or not the privilege applies, which is a question of law; and (2) if so, whether it has been abused, which is a question of fact[.]" *Kleftogiannis v. Inline Plastics Corp.*, 411 F. Supp. 3d 216, 225 (D. Conn. 2019) (citations omitted).

Defendants argue that Mr. Pierce has not set forth a viable defamation claim because he cannot identify any specific defamatory statements or who the statements were published to. Mem. at 37. Defendants also argue that they are entitled to the absolute defense of truth and /or the qualified privilege as contents of their police reports. *Id*. Finally, Defendants argue that Mr. Pierce's defamation claim against Sergeant Critz was commenced outside the applicable statute of limitations. Mem. at 38.

In response, Mr. Pierce argues that the police incident report signed by Officers Robbins and Johnson contained false statements that Mr. Pierce assaulted and injured them, and that those statements were republished in numerous media publications. Opp'n at 26. Mr. Pierce also argues that the factual issue of the veracity of the statements precludes summary judgment. *Id*. Mr. Pierce does not respond to Defendants' argument as to the timeliness of the defamation claim against Sergeant Crtiz, however, in his argument opposing summary judgment on this claim, Mr. Pierce only refers to Officers Robbins and Johnson as publishing allegedly defamatory statements about him. *Id*. at 25–26.

The Court disagrees.

As a preliminary matter, the Court construes this claim as one only against Officer Robbins and Johnson. *See Silano v. Scarnuly-Grasso*, No. 3:12-CV-1732 (JBA), 2017 WL 2802875, at *8 (D. Conn. June 28, 2017) (construing defamation claim to only include the defendant who made the allegedly defamatory statement identified in the plaintiffs' opposition to the defendants' motion to dismiss).

As to them, Mr. Pierce bases his claim on statements contained in police incident reports, which "are protected by the qualified privilege afforded statements made during an ongoing police investigation." *Kelley v. City of Hamden*, No. 3:15-CV-00977 (AWT), 2017 WL 3763839, at *3 (D. Conn. Aug. 30, 2017). "[A] qualified privilege in a defamation case may be defeated if it can be established that the holder of the privilege acted with malice in publishing the defamatory material." *Gambardella*, 969 A.2d at 743 (citing *Hopkins v. O'Connor*, 925 A.2d 1030, 1046 (Conn. 2007)).

The Connecticut Supreme Court has held that a qualified privilege is lost upon a showing of publication of a false statement with knowledge of its falsity or reckless disregard for its

34

truth—actual malice—or upon a showing of publication of a false statement with bad faith or improper motive—malice in fact. *Gambardella*, 969 A.2d at 744.

Reviewing the police reports Mr. Pierce identified, Officer Robbins wrote that Mr. Pierce was being charged with "3 counts of CGS 53a-167C, Assault of a police officer," among other things. Opp'n, Ex. 9 at 8. The report does not expressly identify the basis for the three counts of assault, however, Mr. Pierce maintains that during the incident, he "didn't do anything. [He] wasn't combative. [He] wasn't in any way aggressive." Opp'n, Ex. 3 at 20. This fact is disputed as Officer Robbins's police report details Mr. Pierce throwing a cup of water in an officer's face, Opp'n, Ex. 9 at 8, and the police reports from Sergeant Critz and Officer Marano claim that Mr. Pierce kicked Officer Marano. *Id*. at 19, 22. While there may be a dispute as to whether Mr. Pierce assaulted a police officer, this factual dispute is not sufficient as a matter of law to establish a genuine issue of fact as to the malice necessary to survive summary judgment. *See Gambardella*, 969 A.2d at 748 ("A negligent misstatement of fact will not suffice; the evidence must demonstrate a purposeful avoidance of the truth."); *Chadha v. Charlotte Hungerford Hosp.*, 906 A.2d 14, 23 (Conn. App. 2006) ("Proof of malice requires far more than proof of negligence or proof of disagreement." (citing *Chadha v. Shimelman*, 818 A.2d 789, 794 (Conn. App. 2003))). Officer Johnson wrote in his police report: "This officer was injured as a result of the incident. The injuries consisted of secondary O.C[.] spray and several lacerations on the hands / arms, which were causing me pain. I did not seek medical treatment, but the shift supervisor was informed." Opp'n, Ex. 9 at 13. This does not state that Mr. Pierce injured Officer Johnson; it states that Officer Johnson was injured as a result of the incident, which is substantially true. First, Mr. Pierce does not contest that Officer Johnson experienced secondary OC spray. Second,

Officer Johnson's hand lacerations are corroborated by photographs included in Sergeant Critz's police report. Opp'n, Ex. 9 at 28. Thus, Mr. Pierce cannot establish malice on this record.

Accordingly, the Court will grant Defendants' motion for summary judgment as to the defamation claim.

## IV.     CONCLUSION

For the foregoing reasons, Defendants' motion for summary judgment is **GRANTED in part and DENIED in part**.

Summary judgment is granted as to Mr. Pierce's false arrest claim, Mr. Pierce's excessive force claims against Sergeant Critz and Officer Marano, Ms. Prete's Fourth Amendment claim against Officers Robbins, Gualducci, Marano, and Johnson, Ms. Prete's *Miranda* claim, Ms. Prete's intentional infliction of emotional distress claim, and Mr. Pierce's defamation claim.

Summary judgment is denied as to Ms. Prete's false arrest claim, Ms. Prete's Fourth Amendment claim against Sergeant Critz, Mr. Pierce's excessive force claim against Officers Robbins, Gualducci, and Johnson, Mr. Pierce's failure to intercede claim, Mr. Pierce's intentional infliction of emotional distress claim, and Mr. Pierce's negligence and indemnification claims.

**SO ORDERED** at New Haven, Connecticut, this 16th day of February, 2024.

/s/ Victor A. Bolden
VICTOR A. BOLDEN
UNITED STATES DISTRICT JUDGE